IVOR E. SAMSON (SBN 52767)
MANUEL ALVAREZ JR. (SBN 253874)
SONNENSCHEIN NATH & ROSENTHAL LLP
525 Market Street, 26th Floor
San Francisco, CA 94105
Telephone: (415) 882-5000
Facsimile:  (415) 882-0300
malvarez@sonnenschein.com

Attorneys for Plaintiff
GABRIEL RALPH REYES

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GABRIEL RALPH REYES, an individual, | No. C-07-1449 PJH |
| Plaintiff, | **THIRD AMENDED COMPLAINT** |
| vs. | JURY TRIAL DEMANDED |
| ROBERT HOREL, MICHAEL CLIFTON SAYRE, DWIGHT WALTER WINSLOW, SUE ELLEN RISENHOOVER, MAUREEN MCLEAN, CLAUDIA S. MARTINEZ, ACEL K. THACKER, NOLA GRANNIS, R. FLOTO, JOSEPH KRAVITZ, C. GOROSPE, JAMES EDWARD FLOWERS and DOES 1 - 10, individually and in their official capacities, | |
| Defendants. | |

## **INTRODUCTION**

1. This case arises from Pelican Bay State Prison's flagrant and intentional disregard of a Prisoner's debilitating chronic pain in violation of the Eighth Amendment's prohibition on cruel and unusual punishment.

2. Plaintiff Gabriel Ralph Reyes suffers from spinal related injuries that cause him chronic pain. As a state Prisoner, he depends on Pelican Bay's Health Care Department to provide him with adequate pain medication and treatment in order to control his chronic pain so that he can sleep through the night and function fully during the day.

-1-

3. The Health Care Department has continually and intentionally disregarded Plaintiff's pleas for help and allowed repeated and prolonged lapses in pain medication in flagrant disregard of Plaintiff's medical needs. In addition, the Health Care Department has denied Plaintiff continuing pain management consultations despite a specialist's recommendation for such consultations, and has refused to increase the dosage of Plaintiff's pain medication despite such recommendations by medical specialists.

4. Rather than pay serious attention to Plaintiff's continued pleas for proper medical treatment, Michael Sayre, M.D., Pelican Bay's Chief Medical Officer, deliberately disregarded Plaintiff's medical needs and retaliated against Plaintiff as a result of his pursuit of grievances by canceling Plaintiff's chronic pain medication and other medical services.

5. Pelican Bay's inadequate medical care has caused Plaintiff to suffer a deprivation of rights guaranteed by the United States Constitution. Accordingly, Plaintiff seeks compensatory and punitive damages according to proof at trial.

## JURISDICTION AND VENUE

6. Plaintiff seeks damages pursuant to 42 U.S.C. § 1983 based on violations of rights secured under the Constitution and the laws of the United States. This Court has jurisdiction under 28 U.S.C. §§ 1331 and 1343(a)(3).

7. Venue is proper because a substantial part of the events giving rise to the action occurred in Del Norte County, which is located in this district. 28 U.S.C. § 1391(b)(2).

## PARTIES

8. Plaintiff GABRIEL RALPH REYES is a California state prisoner at Pelican Bay State Prison ("Pelican Bay" or the "Prison").

9. Defendant ROBERT HOREL ("HOREL") was appointed Warden of Pelican Bay in 2007, and has served as the Prison's acting Warden since 2006. From 2002 to 2004, HOREL served as Associate Warden of Health Services at Pelican Bay. Further, upon information and belief, copies of any documents relevant to this complaint and Plaintiff's grievances that were sent to an individual holding title as "Warden" were sent to Defendant

-2-

1   HOREL.

2   10.   Defendant MICHAEL CLIFTON SAYRE ("SAYRE") is a physician licensed
3   by the State of California.  At all times relevant to this complaint, SAYRE was employed as
4   the Chief Medical Officer at Pelican Bay.

5   11.   Defendant DWIGHT WALTER WINSLOW ("WINSLOW") is a physician
6   licensed by the State of California.  At all times relevant to this complaint, WINSLOW was
7   employed as a Health Care Manager at Pelican Bay.

8   12.   Defendant SUE ELLEN RISENHOOVER ("RISENHOOVER") is a registered
9   nurse whose license was issued outside of California.  At all times relevant to this
10  complaint, RISENHOOVER was employed as a Health Care Manager at Pelican Bay.

11  13.   Defendant MAUREEN MCLEAN ("MCLEAN") is a registered nurse licensed
12  by the State of California.  At all times relevant to this complaint, MCLEAN was employed
13  as a Health Care Manager at Pelican Bay.

14  14.   Defendant CLAUDIA S. MARTINEZ ("MARTINEZ") is a registered nurse
15  licensed by the State of California.  At all times relevant to this complaint, MARTINEZ was
16  employed by the Prison.

17  15.   Defendant ACEL K. THACKER ("THACKER") was employed by the Prison
18  as a Correctional Health Services Administrator at all times relevant to this complaint.

19  16.   Defendant NOLA GRANNIS ("GRANNIS") was employed by the Prison as
20  the Chief Inmate Appeals Examiner at all times relevant to this complaint.

21  17.   Defendant R. FLOTO ("FLOTO"), whose full name is presently unknown to
22  Plaintiff, was employed by the Prison as an Inmate Appeals Examiner at all times relevant
23  to this complaint.

24  18.   At all times relevant to this complaint, Defendant JOSEPH KRAVITZ
25  ("KRAVITZ") held the title of Correctional Counselor II and was employed as a Medical
26  Appeals Coordinator at the Prison.

27  19.   Defendant C. GOROSPE ("GOROSPE"), whose full name is presently
28  unknown to Plaintiff, was employed as a Staff Services Analyst in the Prison's Health Care

SONNENSCHEIN NATH & ROSENTHAL LLP
525 MARKET STREET, 26TH FLOOR
SAN FRANCISCO, CALIFORNIA 94105
(415) 882-5000

1   Department's Appeals section at all times relevant to this complaint.

2       20.   Defendant JAMES EDWARD FLOWERS ("FLOWERS") is a registered
3   nurse licensed by the State of California.  At all times relevant to this complaint,
4   FLOWERS was employed by the Prison.

5       21.   John and Jane DOES 1-10 were employed by California Department of
6   Corrections and Rehabilitation and/or Pelican Bay to either provide medical care to inmates,
7   review and assess prisoner administrative complaints concerning prison medical care, or
8   establish guidelines or regulations addressing prison medical care standards.

## FACTS

10       22.   In 1993, Plaintiff fractured a portion of his cervical spine in an automobile
11   accident.  Plaintiff's injury was exacerbated in both 1996 and 1997 when, on separate
12   occasions, various Prison guards physically beat Plaintiff during two forced cell extractions.
13   His injury has continued to worsen throughout the course of his confinement, resulting in
14   increased chronic pain of the arms and hands, as well as muscle spasms, cramping, muscle
15   loss and nerve degeneration.  As a result of his growing chronic pain, Plaintiff began
16   seeking medical attention from the Prison's Health Care Department.

### Plaintiff's Pain Medication Is Suspended - The First 602

18       23.   Prior to September 2004, Plaintiff was provided with pain medication in pill
19   form by the Prison's Health Care Department.  On or about September 9, 2004, the Prison's
20   Health Care Department arbitrarily changed Plaintiff's morning dosage of the pain
21   medication, Neurontin, to a liquid instead of the usual pill form.  Plaintiff informed the
22   attending Medical Technical Assistant ("MTA"), a non-party named Corrigan, that, ever
23   since he was a child, he could not tolerate liquid medication without gagging.  MTA
24   Corrigan told Plaintiff that he had no choice and that his refusal to take the medication
25   would be documented.  While Plaintiff worried about gagging on the liquid medication, he
26   also wished to avoid the institutional and physical repercussions of refusing his pain
27   medication.  Faced with this dilemma, Plaintiff tried to ingest the liquid medication but
28   immediately began to gag and vomit.

-4-

24.     Later that evening, a different MTA, a non-party named Folsom, again attempted to deliver Plaintiff's pain medication in liquid form but was met with the same results.  Plaintiff gave MTA Folsom a written request to see a doctor so that he could explain his aversion to liquid medication.

25.     Immediately thereafter, upon information and belief, Defendant WINSLOW arbitrarily cancelled Plaintiff's pain medication without providing an adequate pain medication alternative.  Plaintiff remained without pain medication for the next several days.  During this time, Plaintiff's request to see a doctor was ignored and intentionally disregarded.

26.     An Inmate Appeal Form, also called a 602, is an all-purpose form used by Prison inmates to voice grievances and make requests related to their confinement.  Prison personnel must respond to a 602 by either granting, denying or partially granting the request.  If a Prisoner is unsatisfied with the response, he or she may appeal it.  A 602 may be appealed three times.  A Prisoner exhausts his or her administrative remedies with respect to a 602 by obtaining a Director's Level Review, which is the last appeal level.

27.     On or about September 15, 2004, approximately six days after Plaintiff's chronic pain medication pills were arbitrarily cancelled, Plaintiff filed an Inmate Appeal Form ("first 602") requesting to see a doctor and to be prescribed effective chronic pain medication.

28.     On or about September 24, 2004, in response to the first 602, RISENHOOVER issued Plaintiff a pill-form pain medication called Salsalate.  RISENHOOVER told Plaintiff that if the Salsalate did nothing to relieve his pain, he should give the remaining medication to the attending MTA along with a written request to see RISENHOOVER.

29.     The Salsalate did nothing to relieve Plaintiff's pain.  Thus, on or about September 26, 2004, per RISENHOOVER's instructions, Plaintiff returned the remaining Salsalate along with a written request to see RISENHOOVER.  In response, with knowledge of Plaintiff's medical needs, RISENHOOVER deliberately disregarded them by refusing to either see Plaintiff or provide Plaintiff with effective chronic pain medication,

-5-

1   thereby depriving him of adequate medical treatment.

2       30.   On or about September 27, 2004, Defendants THACKER and WINSLOW conducted a Second Level Appeal of Plaintiff's first 602.  In connection with this Second Level Appeal Decision, WINSLOW purports to have investigated Plaintiff's allegations and THACKER purports to have reviewed Plaintiff's medical file and responses.  In connection with this Second Level Review, Defendants THACKER and WINSLOW reported that they "partially granted" Plaintiff's appeal by virtue of the Salsalate pills provided the day prior and by scheduling Plaintiff to see the Pain Management Specialist at the next available appointment.  However, Plaintiff had already returned the Salsalate pills because of their inefficacy and never saw a Pain Management Specialist until several months later, in mid-February 2005.  Thus, though THACKER and WINSLOW purport to have "partially granted" Plaintiff's appeal, they, in fact, with knowledge of Plaintiff's medical needs, deliberately disregarded those needs and failed to provide Plaintiff with adequate medical treatment.

    31.   On or about December 17, 2004, Defendants FLOTO and GRANNIS conducted a Director's Level Review of Plaintiff's first 602.  In connection with this Director's Level Review Appeal Decision, FLOTO and GRANNIS purport to have considered all submitted documentation and supporting arguments.  Ultimately, with knowledge of Plaintiff's medical needs, Defendants FLOTO and GRANNIS ordered no changes or modifications to Plaintiff's medical care, thereby deliberately disregarding his needs and depriving him of adequate medical treatment.

<u>Plaintiff's Pain Medication Is Suspended A Second Time - The Second 602</u>

    32.   On or about January 4, 2005, Dr. Larry Maukonen, a neurologist, performed nerve conduction studies on Plaintiff.  In connection with these studies, Dr. Maukonen reported that Plaintiff's muscle condition appeared to have worsened since a prior study on September 2, 2003.  Specifically, Dr. Maukonen reported that Plaintiff's "changes are more pronounced than before with several new muscles being involved on the right, and the changes on the left are new since [the] previous study."  Among other things, Dr. Maukonen

-6-

1    recommended that Plaintiff be provided warm gloves to guard against further deterioration.

2    In addition, despite being directed to see a Pain Management Specialist since at least

3    September 2004, Plaintiff was not seen by a Pain Management Specialist until months later,

4    on approximately February 16, 2005, when he finally had his first and only Pain

5    Management Consultation with non-party Dr. Friedman.  Dr. Friedman prescribed

6    Amitriptyline, a different pain medication, and issued Plaintiff a rubber ball for hand

7    exercise.  Dr. Friedman also recommended continuing Pain Management Consultations

8    every 60-90 days.

9        33.    However, in April 2005, approximately 60 days after commencing the pain

10   management plan, Plaintiff's Amitriptyline was arbitrarily suspended.  Plaintiff remained

11   without pain medication for several days, during which time his chronic pain grew in

12   intensity.  Though Plaintiff's Amitriptyline treatment was eventually restored, Prison

13   officials nevertheless continued to arbitrarily suspend Plaintiff's Amitriptyline treatment on

14   several occasions over the next several months.  During those periods that Plaintiff was

15   without his Amitriptyline treatment, his chronic pain would grow in intensity, rendering him

16   physically exhausted and frustrated.

17       34.    On or about December 16, 2005, Plaintiff filed another Inmate Appeal Form

18   ("second 602") requesting renewed pain medication and a follow-up consultation with the

19   Pain Management Specialist, whom Plaintiff had not seen since mid-February 2005.

20       35.    On or about January 4, 2006, after approximately 19 days without a response

21   to his second 602, Plaintiff submitted a separate written request to be interviewed and to

22   inquire about the status of the second 602.  On or about January 5, 2006, Defendant

23   MARTINEZ responded to Plaintiff's separate written request by informing him that "[she]

24   found [his] 602 in a stack."  That same day, Defendant MARTINEZ performed an Informal

25   Level Review of Plaintiff's second 602.  Defendant MARTINEZ purportedly "partially

26   granted" Plaintiff's request for treatment by scheduling Plaintiff to see a specialist.

27   However, Plaintiff would not again actually see a specialist until one year later, in January

28   2007.  Thus, despite knowledge of Plaintiff's ongoing pain and suffering and need for

1  medical treatment, the response provided by Defendant MARTINEZ, in fact, amounted to a

2  deliberate disregard of Plaintiff's medical needs and an arbitrary denial of adequate medical

3  treatment.

The Sayre Interview

4  36.   On or about March 17, 2006, Defendants RISENHOOVER and SAYRE

5  conducted a First Level Review of Plaintiff's second 602.  The purported decision from this

6  First Level Review was to "partially grant" Plaintiff's appeal.  However, the decision, in

7  fact, did nothing to provide Plaintiff with effective pain medication or with a consultation

8  by a Pain Management Specialist.  Thus, with knowledge of Plaintiff's medical needs,

9  Defendants RISENHOOVER and SAYRE deliberately disregarded those needs by

10 depriving him of adequate medical treatment in connection with the second 602.

11 37.   On or about May 10, 2006, Plaintiff's second 602 received second level

12 review.  Defendant SAYRE interviewed Plaintiff in connection with this review.  In an

13 exchange that lasted approximately two to three minutes, SAYRE asked Plaintiff what he

14 hoped to gain from the second 602.  In response, Plaintiff stated that he hoped to obtain

15 medical treatment to address his chronic pain, and to end the several month delay in

16 obtaining treatment from a Pain Management Specialist.  SAYRE responded, "You're

17 getting better medical treatment than if you were on the street.  You should be satisfied."

18 After a cursory examination, SAYRE dismissed Plaintiff.

19 38.   On or about May 12, 2006, Defendants THACKER and MCLEAN conducted

20 a Second Level Appeal of Plaintiff's second 602.  The purported decision of this Second

21 Level Appeal was to "partially grant" Plaintiff's appeal.  However, the decision, in fact, did

22 nothing to provide Plaintiff with effective pain medication or with consultation by a Pain

23 Management Specialist.  Thus, with knowledge of Plaintiff's medical needs, Defendants

24 THACKER and MCLEAN deliberately disregarded those needs by depriving him of

25 adequate medical treatment in connection with the second 602.

26 39.   On or about September 7, 2006, Defendants FLOTO and GRANNIS

27 conducted a Director's Level Review of Plaintiff's second 602.  In connection with this

1  Director's Level Review Appeal Decision, FLOTO and GRANNIS purport to have
2  considered all submitted documentation and supporting arguments.  Ultimately, in
3  deliberate disregard of Plaintiff's medical needs, Defendants FLOTO and GRANNIS
4  ordered no changes or modifications to Plaintiff's medical care, thereby denying and
5  depriving him from receiving adequate medical treatment.

<u>Sayre Cancels Plaintiff's Chronic Pain Medication - The Third 602</u>

40.     Soon after his interview with SAYRE in May 2006, Plaintiff is informed and believes that SAYRE arbitrarily cancelled Plaintiff's chronic pain medication as well as certain medical devices, including a rubber exercise ball, that had been prescribed for pain management purposes.  On or about May 11, 2006, Plaintiff filed another Inmate Appeal Form ("third 602") complaining of SAYRE's conduct and seeking reinstatement of his chronic pain medication and medical devices.

41.     On or about May 12, 2006, Defendant MARTINEZ visited Plaintiff in response to Plaintiff's inquiry about SAYRE's cancellation of his pain medication.  Plaintiff informed MARTINEZ of his chronic pain and attempted to explain how it prevented him from sleeping.  Plaintiff further asked to be seen by a doctor on an emergency basis. Defendant MARTINEZ denied Plaintiff any emergency relief and refused to notify a primary care provider of Plaintiff's pain and suffering.  Instead, in deliberate disregard of Plaintiff's medical needs, MARTINEZ stated that Plaintiff's situation did not present an emergency as he was capable of breathing and walking 20 feet to speak with her. Defendant MARTINEZ refused to do anything else for Plaintiff and instead told him to write directly to SAYRE.

42.     On or about May 14, 2006, Plaintiff submitted a medical request form at the top of which he wrote, "HELP."  Defendant MARTINEZ again visited Plaintiff and again, in deliberate disregard of Plaintiff's medical needs, refused to notify a primary care provider or schedule a consultation with a primary care provider so that Plaintiff could obtain adequate medical treatment.  Instead, in deliberate disregard of Plaintiff's medical needs, Defendant MARTINEZ told Plaintiff that she could not do anything for him, thereby

1  denying and depriving him of adequate medical treatment..

2  43. On or about June 9, 2006, Defendant THACKER interviewed Plaintiff at his
3  unit regarding his ongoing pain. At that time, Plaintiff also complained of Defendant
4  SAYRE's conduct during the May 2006 examination interview. Nevertheless, with
5  knowledge of Plaintiff's medical needs, Defendant THACKER deliberately disregarded
6  those needs and did nothing to provide Plaintiff with adequate medical care to address his
7  chronic pain or to address his complaint concerning SAYRE.

8  44. Also on or about June 9, 2006, Defendants THACKER and MCLEAN
9  provided a Second Level Appeal Response to Plaintiff's third 602. As part of this Second
10 Level Response, THACKER and MCLEAN purport to have reviewed Plaintiff's medical
11 file and all attachments accompanying the third 602. Nevertheless, THACKER and
12 MCLEAN denied Plaintiff's appeal concerning inadequate pain medication and SAYRE's
13 conduct. Thus, with knowledge of Plaintiff's need for medical treatment, Defendants
14 THACKER and MCLEAN deliberately disregarded those needs and denied and deprived
15 Plaintiff from receiving adequate medical treatment.

16 45. Despite repeated subsequent pleas for help, Plaintiff was without pain
17 medication until approximately June 22, 2006, at which point he began receiving a dosage
18 of 25 mg of Amitriptyline. At no time has Plaintiff been given any explanation for
19 SAYRE's prior arbitrary cancellation of his pain medication in deliberate disregard of his
20 medical needs.

21 46. On or about September 27, 2006, Defendants FLOTO and GRANNIS
22 conducted a Director's Level Review of Plaintiff's third 602. In connection with this
23 Director's Level Review Appeal Decision, FLOTO and GRANNIS purport to have
24 considered all submitted documentation and supporting arguments. Ultimately, with
25 knowledge of Plaintiff's medical needs, Defendants FLOTO and GRANNIS deliberately
26 disregarded those needs and ordered no changes or modifications to Plaintiff's medical care,
27 thereby denying and depriving him of adequate medical treatment.
28

SONNENSCHEIN NATH & ROSENTHAL LLP
525 MARKET STREET, 2 6TH FLOOR
SAN FRANCISCO, CALIFORNIA 94105
(415) 882-5000

#### Plaintiff's Chronic Pain Medication Discontinued a Second Time - The Fourth 602

47. On or about January 2, 2007, after approximately two years since his last visit, Plaintiff was seen by Dr. Maukonen, the neurologist, who recommended that Plaintiff be placed on 50 mg of Amitriptyline as opposed to the then-25 mg dosage. Thereafter, at some time between the neurologist's consultation and approximately January 16, 2007, Plaintiff's dosage was set at 50 mg. Plaintiff was satisfied with the results of this dosage as he was able to sleep through the night uninterrupted.

48. On or about August 2, 2007, during his regularly scheduled evening medication delivery, Plaintiff received no pain medication and was informed that his dosage of 50 mg of Amitriptyline had been discontinued by Defendant SAYRE. On or about August 3, 2007, Plaintiff submitted another Inmate Appeal Form ("fourth 602") complaining of SAYRE's arbitrary suspension of Plaintiff's medication, requesting reinstatement of Amitriptyline at 50 mg, and requesting to be seen by a pain management physician.

49. On or about August 3, 2007, Plaintiff was placed back on Amitriptyline but at a lower dosage of 25 mg. Plaintiff found that the 25 mg dosage did not relieve his pain, thereby keeping him awake for long periods throughout the night. Thus, due to the inefficacy of the 25 mg dosage, Plaintiff continued to appeal the fourth 602.

50. On or about August 13, 2007, Defendant FLOWERS conducted an Informal Level Review of Plaintiff's fourth 602. Defendant FLOWERS responded to the fourth 602 as follows: "(1) Clinic Providers with the Chief Medical Officer determine medications and their dosages, not inmates - Denied; (2) Clinic Providers with the MAR Committee determine specialty consultations, not inmates - Denied; (3) the 602 process is not the venue for claims - Denied." With knowledge of Plaintiff's medical needs, FLOWERS deliberately disregarded those needs by arbitrarily and summarily denying Plaintiff's request for effective pain medication and for a consultation with a Pain Management Specialist, thereby depriving Plaintiff from receiving any adequate medical treatment in connection with the fourth 602.

51. On or about September 12, 2007, Defendants GOROSPE and SAYRE conducted a First Level Review of Plaintiff's fourth 602. Their First Level Review considered Plaintiff's appeal, attachments thereto, and an August 28, 2007 interview with Defendant RISENHOOVER. The purported decision of this First Level Review was to "partially grant" Plaintiff's appeal. However, the decision, in fact, did nothing to provide Plaintiff with effective pain medication or with consultation by a Pain Management Specialist. Thus, with knowledge of Plaintiff's medical needs, Defendants GOROSPE and SAYRE deliberately disregarded those needs by denying and depriving Plaintiff from receiving any adequate medical treatment in connection with the fourth 602.

52. On or about October 4, 2007, Defendants KRAVITZ and MCLEAN conducted a Second Level Appeal of Plaintiff's fourth 602. KRAVITZ and MCLEAN purport to have considered all submitted documentation in connection with Plaintiff's fourth 602. Nevertheless, with knowledge of Plaintiff's medical needs, Defendants KRAVITZ and MCLEAN deliberately disregarded those needs and arbitrarily denied Plaintiff's appeal. In doing so, Defendants KRAVITZ and MCLEAN deprived Plaintiff from receiving any adequate medical treatment in connection with his fourth 602.

53. On or about December 30, 2007, Defendant GRANNIS conducted a Director's Level Review of Plaintiff's fourth 602. In connection with this Director's Level Review Appeal Decision, GRANNIS purports to have considered all submitted documentation and supporting arguments. Ultimately, with knowledge of Plaintiff's medical needs, Defendant GRANNIS deliberately disregarded those needs and ordered no changes or modifications to Plaintiff's medical care. In doing so, GRANNIS deprived Plaintiff from receiving any adequate medical treatment.

### Plaintiff's Current Condition

54. Plaintiff continues to suffer increasing chronic pain, cramping, spasms and muscle loss. Plaintiff's only pain medication is currently 25 mg of Amitriptyline despite the fact that he had been prescribed a 50 mg dosage and has informed Pelican Bay medical personnel that the 25 mg dosage is not effective in relieving his pain and allowing him to

sleep through the night uninterrupted. Also, Plaintiff has not seen a Pain Management Specialist since February 2005, despite Dr. Friedman's recommendation for continuing Pain Management Consultations and treatment every 60 to 90 days.

## FIRST CLAIM FOR RELIEF

**(§1983 - Eighth Amendment Violation—Deliberate Indifference To Serious Medical Needs Against Defendants HOREL, SAYRE, WINSLOW, RISENHOOVER, MCLEAN, MARTINEZ, THACKER, GRANNIS, FLOTO, KRAVITZ, GOROSPE, FLOWERS and DOES 1 - 10)**

55. Plaintiff incorporates by reference the allegations of paragraphs 1 - 54.

56. For purposes of this claim, Plaintiff names each defendant in her or his individual capacity.

57. Plaintiff's Prison medical records establish that he has a serious medical need.

58. Each Defendant named herein knew of Plaintiff's serious medical need.

59. Each Defendant named herein intentionally disregarded Plaintiff's serious medical need by canceling or failing to administer efficacious pain medication between September 2004 and February 2005. These arbitrary cancellations and refusals to administer pain medication caused Plaintiff unnecessary pain and constitutes deliberate indifference to his serious medical need.

60. Each Defendant named herein intentionally disregarded Plaintiff's serious medical need by failing to provide Plaintiff access to a Pain Management Specialist from the time he was transferred to Pelican Bay until February 2005. This substantial and unreasonable delay in treatment caused Plaintiff unnecessary pain and constitutes deliberate indifference to his serious medical need.

61. Each Defendant named herein intentionally disregarded Plaintiff's serious medical need by failing to provide Plaintiff access to a Pain Management Specialist after February 2005 despite the Pain Management Specialist's own recommendation that Plaintiff see him every 60 to 90 days. This denial of access to a qualified medical specialist caused Plaintiff unnecessary pain and constitutes deliberate indifference to his serious medical

1 need.

2       62.    Each Defendant named herein intentionally disregarded Plaintiff's serious
3 medical need by arbitrarily suspending or allowing the suspension of Plaintiff's
4 Amitriptyline for approximately 19 days in December 2005. These arbitrary suspensions
5 caused Plaintiff unnecessary pain and constitutes deliberate indifference to his serious
6 medical need.

7       63.    Each Defendant named herein disregarded Plaintiff's serious medical need by
8 arbitrarily causing or allowing intermittent suspensions of Amitriptyline between February
9 2005 and May 2006. These arbitrary suspensions caused Plaintiff unnecessary pain and
10 constitutes deliberate indifference to his serious medical need.

11       64.    Each Defendant named herein intentionally disregarded Plaintiff's serious
12 medical need by canceling or allowing the cancellation of Plaintiff's Amitriptyline for
13 approximately 42 days beginning in May 2006. These arbitrary suspensions caused
14 Plaintiff unnecessary pain and constitutes deliberate indifference to his serious medical
15 need.

16       65.    Even though Plaintiff had been prescribed 50 mg of Amitriptyline for
17 treatment of his pain, each Defendant named herein intentionally disregarded Plaintiff's
18 serious medical need by arbitrarily and intentionally reducing his dosage to 25 mg. In doing
19 so, Defendants deliberately disregarded Plaintiff's serious medical need.

20       66.    At all relevant times, each of the Defendants named herein acted pursuant to
21 official governmental policy or custom and under color of law.

22       67.    At all relevant times, each of the Defendants named herein acted willfully,
23 wantonly, and in conscious disregard of Plaintiff's serious medical need, for the purpose of
24 causing him further injury.

25       68.    As a proximate result of the Defendants' conduct, Plaintiff has suffered the
26 deprivation of rights guaranteed by the Constitution and the laws of the United States to his
27 damage in an amount according to proof at trial.

28

**SECOND CLAIM FOR RELIEF**

**(§1983 - First Amendment Violation—Retaliation by Defendant SAYRE)**

69. Plaintiff incorporates by reference the allegations of paragraphs 1 - 68.

70. For purposes of this claim, Plaintiff names Defendant SAYRE in his individual capacity.

71. Plaintiff properly filed and appealed grievances about the medical treatment he received from persons in the Pelican Bay medical department, which is activity protected under the First Amendment to the U.S. Constitution.

72. In response to Plaintiff's grievances, Defendant SAYRE unilaterally and arbitrarily cancelled Plaintiff's medical treatment, including his Amitriptyline prescription.

73. The substantial and motivating factor for Defendant SAYRE's decision to cancel Plaintiff's pain medication was in retaliation against Plaintiff for the exercise of his rights under the First Amendment.

74. Defendant SAYRE's retaliatory action did not advance any legitimate goals of the Prison and was not narrowly tailored to achieve any legitimate goals of a correctional institution. Rather, Defendant SAYRE's cancellation of Plaintiff's only chronic pain medication caused him severe harm and suffering.

75. At all relevant times, Defendant SAYRE acted pursuant to official governmental policy or custom and under color of law.

76. At all relevant times, Defendant SAYRE acted willfully, wantonly, and in conscious disregard of Plaintiff's serious medical need, for the purpose of causing him further injury, pain and suffering.

77. As a proximate result of Defendant SAYRE's conduct, Plaintiff has suffered the deprivation of rights guaranteed by the Constitution and the laws of the United States to his damage in an amount according to proof at trial.

//

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for the following relief as to all claims:

1. Compensatory damages according to proof at trial;
2. Punitive damages according to proof at trial;
3. Costs and reasonable attorneys fees; and
4. Such other and further relief as this Court deems just and proper.

**JURY DEMAND**

Plaintiff demands a jury trial.

Dated: July 18, 2008                SONNENSCHEIN NATH & ROSENTHAL LLP


                                    _____/s/_____
                                    MANUEL ALVAREZ JR.
                                    Attorneys for Plaintiff